UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JACK GLENN McVICKERS,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | Civil Action No. 1:11-cv-0098<br>Judge Nixon/Brown |

To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge are Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 6, 7, 10). The Magistrate Judge has also reviewed the administrative record ("Tr."). (Docket Entry 4). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

## I. INTRODUCTION

Plaintiff filed his application for DIB on February 27, 2008, with an alleged onset date of June 22, 2007. (Tr. 46). His claim was denied initially and on reconsideration. *Id.*

At Plaintiff's request, a hearing was held before ALJ Brian Dougherty on January 22, 2010. (Tr. 57-87). The ALJ issued his decision denying benefits on February 5, 2010. (Tr. 46-53).

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact and conclusions of law:

1

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
2. The claimant has not engaged in substantial gainful activity since June 22, 2007, the alleged onset date (20 CFR 404.1571 *et seq*.).
3. The claimant has the following severe impairment: lower back pain due to two bulging discs (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on December 12, 1955 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).
10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).
11. The claimant has not been under a disability, as defined in the Social Security Act, from June 22, 2007 through the date of this decision. (20 CFR 404.1520(g)).

(Tr. 46-53).

The Appeals Council denied Plaintiff's request for review on September 22, 2011.[1] (Tr. 1-3). This action was timely filed on November 21, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD

On July 7, 2007, Plaintiff sought treatment for back pain at the emergency department at Thomas Hospital. (Tr. 225-31). His pain was reported at level 4 on a 10-point scale. (Tr. 228).

---

[1] Plaintiff did not file his request for review on time, but the Appeals Council found there was a good reason for the delay. (Tr. 1).

He sought treatment at the Anand Clinic in Hohenwald on July 11, 2007. (Tr. 237-40). On July 19, 2007, Plaintiff had an x-ray of the lumbar spine with obliques. (Tr. 242). The x-ray showed mild disc space narrowing at the L5-S1 level. *Id*. A CT of the lumbar spine on July 25, 2007 showed mild bulging of the lumbar disc at L4-L5 and calcified left paracentral disc protrusion at the L5-S1 level. (Tr. 241).

On August 8, 2007, Plaintiff reported to Lewis Ambulatory Care Center for physical therapy. (Tr. 262). His therapist noted he had good motivation, and his signs and symptoms were consistent with the medical diagnosis. (Tr. 261). He noted he did not sleep well the night before due to pain. *Id*. On August 9, he reported feeling better, with pain at 5 out of 10. (Tr. 260). On August 14, 2007, Plaintiff noted his pain was at 3 out of 10 but was constant. (Tr. 258). He reported being "85% better" on August 20, 2007, and his pain was rated at 2 out of 10. (Tr. 256). On September 18, 2007, Plaintiff reported being "100% better" after an injection, with 0 out of 10 pain. (Tr. 247). He was discharged from therapy. *Id*.

Plaintiff began seeing Dr. Paul McCombs for back pain on August 16, 2007. (Tr. 275-79). Dr. McCombs noted a positive straight leg raising on the left low back and radicular leg pain, with diminished ankle jerk on the left. (Tr. 275). He recommended epidural steroid injections at L5-S1 left. *Id.*

Plaintiff returned to Dr. McCombs on September 27, 2007. (Tr. 273). He was doing well and was pleased with the results of the injections. *Id.*

Plaintiff saw Dr. McCombs on February 7, 2008, who noted Plaintiff "has had multiple epidural injections since he was last here and this has not helped him." (Tr. 272). An MRI of Plaintiff's lumbar spine without contrast on the same date showed a bilateral mild neural foraminal stenosis due to a mild concentric disc osteophyte bulge at L5-S1, bilateral mild facet arthropathy at

3

L4-5 and L5-S1, and dessicated discs at L2-3, L3-4, and L4-5 with posterior annular tear at L4-5. (Tr. 268).

On February 19, 2008, Plaintiff had a lumbar discography with a companion CT of the lumbar spine. (Tr. 265-67). At levels L4-5 and L5-S1, Plaintiff experienced concordant pain. *Id.* At a follow-up visit on February 21, 2008, Dr. McCombs discussed the option of operative intervention with Plaintiff. (Tr. 270).

In a Function Report dated April 8, 2008, Plaintiff reported daily activities including washing dishes, filling bird feeders, regularly riding and/or driving six (6) miles with his wife, shopping, vacuuming, sweeping floors, watching television, and reading. (Tr. 166-73). His wife cares for most of their animals, but he feeds the dogs and horses when she is away. (Tr. 167). He can heat leftovers or make a sandwich. (Tr. 168). He can do vacuuming or sweeping for about 30 minutes per day, spread throughout the day. *Id.* On a good day, he takes a short motorcycle ride. (Tr. 169). He is not able to ride his motorcycle or horses as often as in the past. (Tr. 170). He eats with friends a couple of times a month. *Id.* He can walk 600 feet before needing to rest for a couple of minutes, and he follows written or spoken instructions well. (Tr. 171). He uses a back brace to help support his back and has used a cane in the past. (Tr. 172). He was unable to hold his 3-month-old grandson due to back pain. (Tr. 173). He takes over the counter pain medications for his back pain, but they do not completely alleviate his pain. *Id.*

In a Pain Questionnaire dated April 8, 2008, Plaintiff noted he has had pain in the lower back and down the left leg since June 2007. (Tr. 174). The pain is not as bad as it was then, but it is still severe and almost constant. *Id.* He takes ibuprofen for the pain. *Id.* The medicine usually relieves the pain if he reclines for approximately 30 minutes. *Id.* He uses a back brace, has used a cane, and performs exercises recommended by his physical therapist. (Tr. 175).

On May 28, 2008, Plaintiff saw Dr. Darrel Rinehart for a consultative examination. (Tr. 286-88). Plaintiff's range of motion in his hands, shoulders, wrists, elbows, C-spine, feet, ankles, knees, and hips was normal. *Id.* He had some low back pain at 45 degrees on the straight reflex test on the left leg, a "mildly positive" result. *Id.* He was able to get up and down from the examination table and walked slowly but with a normal station and gait. *Id.* He was able to get up on his heels and toes, do heel to toe walking, and squat and rise. *Id.* His anterior lumbosacral flexion was approximately 75-80 degrees, and lateral flexion was 30 degrees. *Id.* In the lumbosacral spine, extension was 20 degrees. *Id.* Dr. Rinehart believed he had no impairment related physical limitations. *Id.*

Reeta Misra, M.D., a non-examining consultant, submitted a Physical Residual Functional Capacity Assessment dated June 18, 2008. (Tr. 289-96). She believed Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; could stand and/or walk 6 hours in an 8-hour workday; could sit 6 hours in an 8-hour workday; and could occasionally climb ladder/rope/scaffolds. *Id.*

Dannylu Wilson, NP, submitted a note dated January 14, 2010. (Tr. 302). She indicated Plaintiff suffered from lumbar disc dessication with severe back pain, which has resulted in peripheral neuropathy and paresthesia and significant atrophy. *Id.*

Rick Harris, PT, examined Plaintiff on January 20, 2010. (Tr. 298-301). He believed Plaintiff should be limited to sedentary-light work, with difficulty working 8 hours per day. *Id.* He did not display symptom magnification but passed 31/43 validity criteria, which suggested a "fair" effort. *Id.*

Fred Beaman, the Interim Chief of Police for the Gulf Shores Police Department in Gulf Shores, AL, submitted an affidavit on Plaintiff's behalf dated January 21, 2010. (Tr. 203-08). He included a job description containing the physical requirements of a police officer. He noted

5

Plaintiff was not physically able to do his job all the time, and he retired as a result. *Id.*

At his hearing, Plaintiff testified that he was 54 years old, six feet tall, and weighed 250 pounds. (Tr. 67). He currently lives with his wife, Lynn, in Hohenwald. (Tr. 68). They moved to Tennessee from Gulf Shores, Alabama in July 2007. *Id.*

Plaintiff has some college education, with approximately 16 credits in law enforcement training. (Tr. 68). He graduated from high school. *Id.*

Plaintiff does not drive due to back pain, but he has a license. (Tr. 69). His wife drove him to the hearing, and during the one-and-one-half hour ride, they stopped twice for him to get out and walk around for 10 to 15 minutes. (Tr. 80). He was unable to drive to see his youngest son off to Iraq. (Tr. 80-81).

Plaintiff retired from the police force in 2007. (Tr. 69-70). He was eligible to retire and was having back trouble, which was a "major factor" in his decision to retire, because he was not able to perform his duties. (Tr. 69). He planned to retire, move to Tennessee, and apply for a job with the National Parks Service. *Id.* He applied for a position at the National Parks Service on an unspecified date and did not get the job. (Tr. 70). He has not worked since June 22, 2007. (Tr. 70). Plaintiff was not able to work the full two weeks after he gave notice of retirement. (Tr. 77-78). Plaintiff went to the emergency room for back pain on the night of his retirement party, because he was unable to walk due to pain. (Tr. 79).

Around his alleged onset date of June 22, 2007, Plaintiff started having back pain and spasms. (Tr. 70). He has lower back pain that radiates down his left leg to his foot. (Tr. 70-71). The pain is almost constant, and Plaintiff only gets relief when he sits in a recliner with his feet up or lies in bed. (Tr. 71). The pain is worsened by standing or sitting for any length of time. *Id.* He can stand for approximately 20 minutes before needing to sit down and rest for 15 to 20 minutes.

6

(Tr. 71). He can sit through a church service for about an hour but has to fidget and move around. *Id*.

For the last six weeks or so that he was working, Plaintiff was unable to sit for extended periods of time and was unable to handle road blocks, ride in a patrol car for a full shift, and wear his gun belt and bullet-proof vest. (Tr. 78). The added weight of the gun belt and vest caused too much pain to his lower back. *Id.* Plaintiff was also concerned about performing the mental part of his job, because he believed he might put someone's life in danger by forgetting something or interpreting something incorrectly. (Tr. 82).

Plaintiff was taking Aleve three times per day but stopped due to excessive bleeding. (Tr. 72). The Louis Medical Center prescribed Celebrex and Lortab for the pain. *Id.* They do not really help. *Id.* He does have memory loss, but he did not believe it was a side effect of his medication. (Tr. 72-73).

Plaintiff is able to shop for groceries with his wife, and he can climb stairs slowly. (Tr. 73). He is not able to lift any weight. *Id.* He can slowly stoop down once if he holds onto a table or something else. (Tr. 73-74). He can follow one or two step instructions, and he can use his hands. (Tr. 74). Plaintiff believes he would have to have written instructions or be reminded. (Tr. 83). If he was able to alternate sitting and standing, Plaintiff believes his ability to stand would become shorter as they day went on, with longer periods of sitting needed. (Tr. 74).

Plaintiff tosses and turns at night and wakes up three to four times per night. (Tr. 74-75). His left leg throbs at night. (Tr. 75).

Plaintiff goes out in the morning to let the dogs out, fills bird feeders, and goes with his wife to take care of the horses. (Tr. 75). He opens the gates for the horses. *Id.* He is no longer able to ride motorcycles or horses. *Id.* He sold one of his motorcycles and had another one for sale at

7

Case 1:11-cv-00098   Document 11   Filed 01/03/13   Page 7 of 15 PageID #: 377

the time of the hearing. (Tr. 82). He is not able to do any yard work. (Tr. 75). He is up for about two hours in the morning before he must use the recliner for three to four hours. (Tr. 79-80).

Plaintiff has also stopped answering the phone and keeping up with the family's finances. (Tr. 81). He cannot concentrate on the finances as he used to. *Id.* He no longer reads because he cannot concentrate. *Id.* He has fallen twice. (Tr. 82). He cannot shower or go to the bathroom if his wife is not in the house, because he is afraid of falling. *Id.*

Plaintiff saw Dannylu Wilson, NP, for medical care one time prior to the hearing. (Tr. 76). He saw Dr. Vanad beginning in July 2007. *Id*. He saw Dr. McCombs for his back treatment until February 2008. *Id*. Dr. McCombs suggested surgery on Plaintiff's back as "a last resort." (Tr. 76-77). Plaintiff also feared worsened back pain after the surgery. *Id.* Plaintiff has had three epidural injections, only one of which helped "a little bit." (Tr. 77). The other two did not help at all. Plaintiff also had a discogram, and afterward Dr. McCombs recommended surgery. *Id.* Plaintiff can no longer see Dr. McCombs because his new insurance excludes coverage for his back. (Tr. 77).

Vocational Expert ("VE") Gary Sturgill testified that Plaintiff's past work as a police officer would provide transferable skills to the light level but would not transfer to sedentary positions. (Tr. 66-67). The ALJ asked Dr. Sturgill to consider a hypothetical individual with Plaintiff's education, training, and past relevant work limited to occasionally lifting 50 pounds; frequently lifting 25 pounds; standing, sitting, and walking up to 6 hours per day; and no limitations with regard to pushing and pulling. (Tr. 83). Dr. Sturgill noted Plaintiff's past work as a police officer would be available under those restrictions. *Id.*

The ALJ next asked Dr. Sturgill to consider the same individual with the same exertional limitations but limited to 20 minutes standing requiring a 15 minute break and to sitting up to one

8

Case 1:11-cv-00098   Document 11   Filed 01/03/13   Page 8 of 15 PageID #: 378

hour at a time requiring a one hour break. (Tr. 84). There would be no work available for such an individual. *Id.* Dr. Sturgill noted that the number of breaks would be more than allowed and that a person who must change position that frequently was not capable of sustained work activity. *Id.*

The ALJ asked Dr. Sturgill to consider a hypothetical individual who could occasionally lift 20 pounds and frequently lift 10; who could sit, stand or walk up to 6 hours per day; and who had no limitations on pushing or pulling. (Tr. 84). Dr. Sturgill eliminated Plaintiff's past work, but the hypothetical individual could perform other light jobs, including unarmed security guard (1,400 in Tennessee; 82,000 nationwide), general office clerk (2,900 in Tennessee; 174,000 nationwide), and counter clerk (1,100 in Tennessee; 58,000 nationwide). (Tr. 84-85). If the individual needed extended breaks of more than 15 minutes throughout the day, no employment would be available. (Tr. 85). Additionally, if Plaintiff's testimony about his concentration and memory limitations were accepted as true, he would be unemployable. (Tr. 86).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

Plaintiff argues that the ALJ erred in rejecting the opinions of the physical therapist and nurse practitioner who examined Plaintiff, by improperly evaluating Plaintiff's credibility, and by concluding Plaintiff could perform a full range of light work. For the reasons set forth below, the Magistrate Judge believes the ALJ's decision was proper.

A.  <u>Standard of Review</u>

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

9

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.*; *see also Moon*, 923 F.2d at 1181. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through VE testimony. *See Wright*, 321 F.3d at *616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

C. The ALJ Properly Considered the Opinions of Rick Harris and Dannylu Wilson

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's

11

impairments.  20 C.F.R. § 404.1527(d)(2).  Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time.  20 C.F.R. § 404.1527(d)(2)(I)-(ii).  In the case of a physical therapist or nurse practitioner, who are not "acceptable medical sources" within the meaning of 20 CFR §§ 404.1527(d)(2) and 416.927(d)(2), the ALJ need not give the opinion controlling weight. *See also* SSR 06-03p. Moreover, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

As Plaintiff argues, the ALJ may rely on "other sources," including nurse practitioners and therapists, to "show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 1513(d). However, a medical source who is not an "acceptable source" under the regulations may not be considered a treating physician whose opinion may be entitled to controlling weight. *See* SSR 06-03p.

Here, the ALJ rejected nurse practitioner Dannylu Wilson's opinion. (Tr. 50). He noted Ms. Wilson did not indicate the duration or extent of her treating relationship with Plaintiff. She also did not explain the basis for her conclusions, and her opinion was inconsistent with other evidence in the record. (Tr. 50). It is clear that the ALJ would have had significant evidence for rejecting Ms. Wilson's opinion, even if it were submitted by an acceptable medical source.

With regard to Mr. Harris's opinion, the ALJ performed a similar analysis. (Tr. 51). The ALJ noted Mr. Harris's report that Plaintiff passed 31 out of 43 validity criteria during the test, which meant his effort was only "fair." (Tr. 51). Moreover, despite Mr. Harris's unacceptability as a medical source, the ALJ gave his opinion some weight. *Id.*

D. The ALJ Properly Evaluated Plaintiff's Credibility

An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Like any other factual finding, an ALJ's adverse credibility finding must be supported by substantial evidence. *Doud v. Commissioner*, 314 F. Supp. 2d 671, 678-79 (E.D. Mich. 2003). Plaintiff argues that the ALJ made a factually incorrect statement that Plaintiff's back condition improved after 2007 and discounted his credibility as a result. He further argues that the ALJ incorrectly inferred that Plaintiff's failure to see a doctor regarding his back after February 2008 indicated his condition had improved, as Plaintiff testified his back condition was excluded from his wife's insurance as a preexisting condition.

The Magistrate Judge believes there is substantial evidence to support the ALJ's credibility finding. Plaintiff repeatedly informed medical providers in 2007 that his pain was improved, reporting a 100% improvement and 0 out of 10 pain on September 27, 2007 after an epidural injection.[3] (Tr. 247). In February 2008, Dr. McCombs noted Plaintiff's reports of no relief from epidural injections. (Tr. 272). After imaging studies were performed, Dr. McCombs discussed surgery. (Tr. 270). Plaintiff apparently never returned to Dr. McCombs's care, and Plaintiff testified he feared worsened back pain after surgery. (Tr. 76-77).[4]

In addition, Plaintiff has apparently not sought prescription pain medication from any other

---

[3] At his hearing, Plaintiff testified that he had received three epidural injections, only one of which helped "a little bit." (Tr. 77). This is directly contradicted by his reports to his physical therapists after the first injection. (Tr. 247).

[4] Plaintiff testified that he no longer saw Dr. McCombs due to lack of insurance coverage for his back pain. (Tr. 77).

13

medical professional for 2 years, from early 2008 to January 2010. He takes over-the-counter medication for his pain. (Tr. 174). It appears Ms. Wilson prescribed pain medication for him shortly before the hearing. (Tr. 72). Dr. Rinehart's consultative examination showed a normal station and gait; a "mildly positive" straight leg raise test on the left leg; and the ability to squat and rise, do heel to toe walking, and get up on his heels and toes. (Tr. 286-88). Dr. Rinehart concluded Plaintiff had *no* impairment-related physical conditions.

Despite a small amount of evidence in the record supporting his claims, the ALJ determined Plaintiff was able to perform only light work. In the ALJ's view, Plaintiff "can no longer function at the very active levels that he used to enjoy before he began experiencing back pain," but "the record does not support the conclusion that he can no longer perform work at a light functional capacity level." (Tr. 52).

E. The ALJ Properly Determined Plaintiff's RFC

Plaintiff's argument on this point is essentially a restatement of his previous arguments. He argues that the ALJ failed to properly consider Mr. Harris's opinion and to properly evaluate Plaintiff's testimony regarding his ability to engage in sustained work activity. For the reasons set forth above, the Magistrate Judge believes the ALJ properly evaluated Plaintiff's credibility regarding his ability to work and complaints of pain and that the ALJ properly evaluated and weighed Mr. Harris's opinion evidence. Therefore, the ALJ properly evaluated Plaintiff's RFC.

## IV. RECOMMENDATION

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which

to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 3rd day of January, 2013.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge